# United States District Court

# Eastern District of New York

| | | |
|---|---|---|
| YAAKOV KATZ, | ) | |
| individually and on behalf of a class | ) | |
| of persons similarly situated, | ) | |
| Plaintiff, | ) | Case No. _____ |
| v. | ) | |
| | ) | **COMPLAINT** |
| | ) | **CLASS ACTION** |
| METROPOLITAN TRANSPORTATION | ) | |
| AUTHORITY, a New York public benefit | ) | |
| corporation, | ) | |
| Defendant. | ) | |

## INTRODUCTION AND SUMMARY

1.    Plaintiff Yaakov Katz ("Plaintiff"), individually and on behalf of a class defined herein, brings this action to secure statutory damages for Defendant's reckless, i.e., "willful" violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. §§ 1681 et seq.

2.    FACTA, at 15 U.S.C. § 1681c(g), provides that:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

3.    Full compliance with FACTA's truncation requirement, which was enacted for the express purpose of reducing the risk of identity theft, has been required at all time since December 4, 2006.  (¶¶ 14-24; 35-42, *infra*).

1

4.    Despite years of publication, notice and compliance by other persons accepting credit and debit cards for the transaction of business, Defendant (including subsidiary and affiliated entities as more fully described below) has willfully and recklessly failed to comply with the truncation requirement for years and, on information and belief, continues to do so to this day.  (¶¶ 43-58, *infra*)

5.    Plaintiff seeks statutory damages, attorneys' fees, costs and such other relief as the Court deems proper.  Based on the timing and location of the violations with respect to Plaintiff Yaakov Katz ("Plaintiff") the scope of such violations and the number of victims such as Plaintiff plainly meets the numerosity requirements of Federal Rule of Civil Procedure 23(a).  Since liability attaches automatically on the issuance of each violative receipt, leading to identically determined statutory damages of at least $100, and the members of the class can be identified from the same records and databases on which liability is predicated, all other criteria for class certification under Fed. R. Civ. P. 23(a) and (b)(3) are met. (¶¶ 25-34, *infra*)

## JURISDICTION – VENUE

6.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

7.    Venue is proper because MTA conducts business within this District and the transactions giving rise to this lawsuit occurred within this District.

## PARTIES

8.    Plaintiff, Yaakov Katz, is an individual who resides in Brooklyn, New York, in this District.

9.    Defendant, the Metropolitan Transportation Authority, is a public benefit corporation chartered by the state of New York.  Directly and through its subsidiaries and affiliates, which are also public benefit corporations,[1] the MTA owns and/or operates extensive transportation facilities throughout the New York Metropolitan Region, including this District.  Among such facilities are the MTA New York City Transit (Subway and Bus) System, MTA Long Island Rail Road, MTA Metro-North Railroad, the MTA Staten Island Railway, Verrazano-Narrows, Bronx-Whitestone, Throgs Neck, Robert F. Kennedy (formerly Triboro), Cross Bay and Marine Park Bridges, and Hugh L. Carey (Brooklyn-Battery) and and Edward I. Koch (Queens-Midtown) Tunnels.  The MTA and all such subsidiary and affiliated entities and their facilities and operations are collectively referred to herein as "MTA" or "Defendant."

---

[1]  The Long Island Rail Road Company, Metro-North Commuter Railroad Company, Staten Island Rapid Transit Operating Authority, MTA Bus Company, and MTA Capital Construction Company are subsidiaries of  MTA, The Triborough Bridge and Tunnel Authority, and New York City Transit Authority, and its subsidiary, the Manhattan and Bronx Surface Transit Operating Authority, are affiliates of MTA.

10.   Numerous MTA facilities and operations collect tolls, fees, fares and other charges from individuals, for which MTA accepts credit and debit cards as payment.

11.   MTA is thus a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of 15 U.S.C. § 1681c(g).

## INDIVIDUAL FACTUAL ALLEGATIONS

12.   Plaintiff repeats all previous allegations with the same force and effect as if fully stated herein.

13.   In operating its facilities and accepting credit or debit cards for payments and charges, MTA uses numerous devices that electronically print receipts for such transactions.

14.   With respect to point of sale machines, terminals or devices that were first put into use after January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1), including the truncation requirement.

15.   With respect to point of sale machines, terminals or devices in use before January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1), including the truncation requirement, on or after December 1, 2006.

16.     Plaintiff is the holder of a "VISA" bank issued credit and/or debit card as defined under 15 U.S.C. § 1681a.

17.     On August 12, 2015, Plaintiff paid a toll on the Verrazano Narrows Bridge with his credit card.

18.     On January 25, 2017, Plaintiff paid a toll on the Bronx-Whitestone Bridge with his credit card.

19.     At the completion of each transaction, Plaintiff was given a customer copy of electronically printed receipt that did not suppress or truncate the first six digits of Plaintiff's credit card number (hereinafter the "Katz Receipts").

20.     On information and belief, the computer systems which generated the Katz Receipts were programmed through hardware or software design and setup to print the six first digits of credit card numbers on each and every credit card receipt that MTA's computer systems or any of their constituent hardware and software components generated.

21.     Though the two Katz Receipts were issued at two different facilities, over a year apart, each printed the first six digits of Plaintiff's account number, which FACTA commands shall not be printed.

22.     MTA's issuance of the two Katz Receipts demonstrates that for well over a year at the least, MTA's point of sale terminals were programmed to issue

customer receipts identical to the Katz Receipts with respect to the printing of credit card account digits.

23.    In allowing point of sale receipts such as the Katz Receipts to include digits other than the last five digits of customers' credit card numbers, MTA acted in reckless disregard of the applicable legal standard, as to which MTA (and indeed the world) have been on repeated actual notice for many years.

24.    This was "not only a violation under a reasonable reading of the statute's terms," but MTA  "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless," and was thus "willful" within the meaning of FACTA, as established by the United States Supreme Court.  *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68 (2007).

## CLASS ALLEGATIONS

25.  Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

26.    The proposed class is defined as:

All persons who at any time since five years prior to the filing of this action, used a debit or credit card at any of MTA's bridge, tunnel, rail, bus or other facilities and were provided an electronically printed receipt showing more than the last five digits of that person's credit or debit card number.

27.    The class is so numerous that joinder of all individual members in one action would be impracticable.

28.    There are, on information and belief, many hundreds of thousands of persons who meet the class definition, all of whom can be individually identified through the use of their credit card data, or through other databases maintained by defendant and/or credit card issuers.

29.    Plaintiff's claims are typical of the claims of the class members.  All are based on the same legal theories and arise from the same conduct.

30.    Common questions of fact and law affecting members of the class predominate over questions which may affect individual members.  These include the following:

      a.    Whether MTA provided customers with a sales or transaction receipts which failed to comply with the truncation requirement;

      b.    Whether MTA's conduct in doing so for a period of years was reckless, so as to qualify as "willful" under FACTA.

      c.    The appropriate amount of statutory damages to award to each member of the class.

31.    Plaintiff will fairly and adequately represent the class members.

32.    Plaintiff has no interests that conflict with the interests of the class members.

33.    Plaintiff has retained counsel experienced in consumer class action matters.

34.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members.

7

# CLAIM FOR RELIEF

35.    Plaintiff repeats the allegations of paragraphs 1-34 with the same force and effect as if fully set forth herein.

## _Background -- FACTA_

36.  A primary purpose of FACTA was to amend the FCRA by mandating identity theft protections for consumers.

37.  In this regard, Congress identified the account number as the "single most crucial piece of information a criminal would need to perpetrate account fraud," Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (Rep. Mahoney), because the inclusion of excess account information on a receipt enables anyone who sees the receipt to use the data in it to discover further information about the consumer.

38.  Accordingly, Congress decided to "require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information," and to "limit the number of opportunities for identity thieves to 'pick off' key card account information," S. Rep. No. 108-166, at pp. 3 and 13 (2003), based on its determination that printing more than the last five digits of a consumer's credit card number poses an unacceptable risk of identity theft.  See, e.g., FACTA, Pub. L. No. 108-159, Title

I, Subtitle A, 117 Stat. 1952 (including truncation requirement subtitle heading "Identity Theft Prevention.")

39.    The repeatedly stated intent of the drafters was "that anytime a transaction is made and information is transmitted using a credit card number, that number has to be truncated so that someone who wants to steal your identity by grabbing ahold of your credit card number will not have the full number"). 149 Cong. Rec. H8122-02 (statement of Rep. Shadegg) 149 Cong. Rec. H8122-02 (statement of Rep. Jackson-Lee) ("This bill ... will include comprehensive identity theft ... provisions." H.R. Conf. Rep. No. 396, 108th Cong., 1st Sess. (2003) (statement of Rep. Oxley) ("One of the central elements of [the FACTA bill] was to make the new fraud prevention ... contained in the legislation the new uniform national standards on those subject matters. The bill was drafted in this way because identity theft is a national concern."

40.    In providing minimum statutory damages of $100 to $1,000 for each "willful" violation of the truncation requirement, as provided in 15 U.S.C. § 1681n(a)(1)(A), Congress specifically identified the concrete harm it sought to alleviate (identity theft risk), determined that first eleven digits of credit card numbers should be redacted to alleviate that risk, and extended standing to vindicate that right through statutory damages, recoverable by the

9

consumer/cardholder as to each issuance of a receipt resulting from a willful, i.e. reckless, violation of the statute.

41.    On June 3, 2008, President George W. Bush signed The Credit and Debit Card Receipt Clarification Act (Clarification Act), which amended FACTA. The Clarification Act provides that "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt."

42.    The Clarification Act gave no similar "safe harbor" to prior violations of the truncation requirement, which has remained in full force and actionable since FACTA's effective date.

*Defendant's Knowledge of and Reckless, i.e. "Willful" Violation of the Truncation Requirement*

43.    Banks and credit card associations (i.e. Visa, MasterCard, American Express, Discover, etc.) have informed entities which accept credit or debit cards, such as MTA, for years about FACTA and its truncation requirement.

44.    VISA, MasterCard, the PCI Security Standards Council (a consortium founded by VISA, MasterCard, Discover, American Express), companies that sell cash registers and other devices for the processing of credit or debit card payments,

and other entities informed entities which accept credit or debit cards, such as MTA, about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers.

45.    MTA, by the terms of its contracts with Visa, MasterCard, American Express, and/or Discover, acknowledged its awareness of FACTA's truncation requirements and expressly agreed to be FACTA compliant.

46.    Visa explicitly instructed entities which accept credit or debit cards, including MTA, that a credit or debit card number must be truncated to no more than five digits.

47.    Credit card issuers have given presentations and circulated compliance information and rules to major retailers and associations of such retailers including, on information and belief, MTA, to explain how to comply with the truncation requirement.

48. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all entities which accept credit or debit cards that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt."   MTA, on information and belief, received this and subsequent Rules from Visa.

49.     MasterCard has explicitly instructed entities which accept credit or debit cards, including MTA, that a credit or debit card number must be truncated to no more than five digits.

50.     American Express has explicitly instructed entities which accept credit or debit cards, including MTA, that a credit or debit card number must be truncated to no more than five digits.

51.     Discover has explicitly instructed entities which accept credit or debit cards, including MTA, that a credit or debit card number must be truncated to no more than five digits.

52.     Not only was MTA informed it could not print more than the last five digits of credit card numbers, it was contractually prohibited from doing so. Defendant accepts credit cards from all major issuers; these companies set forth requirements that entities which accept credit or debit cards, including Defendant, must follow, including FACTA's redaction and truncation requirements.

53.     A bulletin dated June 14, 2006 issued by AllianceData, a credit card processor, informed its customers that under FACTA "no person that accepts credit cards or debt cards for the transaction of business shall print more that the last 5 digits of the card number . . . upon any receipt provided to the cardholder at the point of sale transaction." It further stated that Visa required compliance by July 1, 2006 and MasterCard by April 1, 2005.

54. As early as May 2007, the Federal Trade Commission issued a business alert entitled "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," which stated: "According to the federal Fair and Accurate Credit Transactions Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number . . ."

55. MTA, on information and belief, received and understood such communications.

56. By virtue of the matters set forth in paragraphs 43 – 55, above, and elsewhere in this Complaint, MTA knew or should have known of its obligations under FACTA for years before the FACTA violations sued for herein.

57. Nevertheless, MTA has operated for years, in reckless, i.e. willful, disregard of FACTA's requirements and, on information and belief (for example the second Katz receipt issued in late January 2017) continues to use point of sale machines or devices that print receipts in violation the truncation requirement.

58. Accordingly, each issuance by MTA of a point of sale credit or debit card receipt to Plaintiff and each member of the class defined herein constitutes a separate reckless, i.e. "willful" violation of 15 U.S.C. § 1681c(g), entitling Plaintiff and each member of the class to statutory damages of at least $100.

13

**WHEREFORE**, Plaintiff prays that this Court: 1) certify the class as described herein; and 2) enter judgment in favor of Plaintiff and the class and against MTA awarding:

a.    Statutory damages of no less than $100 nor more than $1,000 per violation;

b.    Pre- and post-judgment interest, reasonable attorneys' fees and costs; and

c.    Such other and further relief as the Court may deem proper.

DATED this 27th day of January 2017.

**LAW OFFICES OF SHIMSHON WEXLER, P.C.**

By: /s/ Shimshon Wexler
   Shimshon Wexler
216 West 104th St., #129
New York, New York 10025
(212) 760-2400
(917) 512-6132 (FAX)
shimshonwexler@yahoo.com

**HERZFELD & RUBIN, P.C.**

Daniel V. Gsovski
Howard L. Wexler
125 Broad Street
New York, New York 10004-1300
Telephone: (212) 471-8512
E-mail: dgsovski@herzfeld-rubin.com
E-mail: hwexler@herzfeld-rubin.com