**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Yaakov Katz, *individually and on behalf of all others similarly situated,* | : : : : |
| Plaintiff, | : |
| v. | : Civil Action No.: 1:17-cv-00472-KAM-RJM |
|  | : |
| Metropolitan Transportation Authority, | : ORAL ARGUMENT REQUESTED |
| Defendant. | : : : : |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO MOTION TO DISMISS**
**THE AMENDED COMPLAINT**

**HERZFELD & RUBIN, P.C.**
125 Broad Street
New York, New York 10004-1300
(212) 471-8512
(212) 344-3333 (FAX)
E-mail: dgsovski@herzfeld-rubin.com

**LAW OFFICES OF SHIMSHON WEXLER, P.C.**
216 West 104th St., #129
New York, New York 10025
(212) 760-2400
(917) 512-6132 (FAX)
E-mail: shimshonwexler@yahoo.com

Attorneys for Plaintiff Yaakov Katz

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION AND SUMMARY ................................................................................1

BACKGROUND .................................................................................................................2

    *FACTA and the Clarification Act*.................................................................................... 2

    *The Amended Complaint* .................................................................................................4

    *Legal Standard* ...............................................................................................................7

ARGUMENT .......................................................................................................................8

    I.  TO ADDRESS AN IDENTIFIED HARM OR RISK OF HARM, CONGRESS
        CAN CREATE CREATE NEW ACTIONABLE PRIVATE RIGHTS THAT
        HAD NOT PREVIOUSLY EXISTED.................................................................... 8

    II.  TO ADDRESS A RISK OF HARM INHERENT IN PROHIBITED
         CONDUCT, CONGRESS MAY CONFER STANDING ON AN AFFECTED
         PARTY AND AWARD CONCRETE REDRESS TO A MEMBER OF THE
         PROTECTED CLASS, WHETHER OR NOT THAT PERSONS SUFFERED
         HARM HERSELF......................................................................................................... 11

    III. FACTA'S CARD NUMBER TRUNCATION REQUIREMENT, WHETHER
         SEEN AS "SUBSTANTIVE" OR "PROCEDURAL," IS ACTIONABLE BY
         THE RECIPIENT OF A VIOLATIVE RECEIPT......................................................... 14

    IV. CONGRESS' TWICE REPEATED FINDINGS AS TO THE RISK OF
         HARM INHERENT IN A VIOLATION OF THE TRUNCATION
         REQUIREMENT MERIT "MUCH DEFERENCE.".................................................. 23

    V.  UNDER THE SUPREME COURT'S *SAFECO* TEST, MTA'S CONDUCT,
         "OBJECTIVELY ASSESSED," "RAN A RISK OF VIOLATING THE LAW
         SUBSTANTIALLY GREATER THAN THE RISK ASSOCIATED WITH A
         READING THAT WAS MERELY CARELESS," AND THEREFORE DOES
         NOT REQUIRE "SUBJECTIVE KNOWLEDGE ON THE PART OF THE
         OFFENDER." ................................................................................................................. 25

    VI. FACTA'S CARD NUMBER TRUNCATION REQUIREMENT IS
         SUSCEPTIBLE OF ONLY ONE CONSTRUCTION, UNDER WHICH
         DEFENDANT'S SYSTEMATIC VIOLATION OF IT WAS RECKLESS
         WHEN "OBJECTIVELY ASSESSED" UNDER *SAFECO*.......................................... 27

CONCLUSION ...................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alston v. Countrywide Fin. Corp.,*
   585 F.3d 753 (3d Cir. 2009) ................................................................21

*Altman v. White House Black Mkt., Inc.,*
   No. 1:15-cv-2451-SCJ, 2016 U.S. Dist. LEXIS 92761 (N.D. Ga. July 13, 2016) .............10, 14

*Amason v. Kangaroo Exp.,*
   No. 7:09-CV-2117-RDP 2013 U.S. Dist. LEXIS 32981, 2013 WL 987935 (N.D.
   Ala., Mar. 11, 2013) ................................................................14

*Arcilla v. Adidas Promotional Retail Operations, Inc.,*
   488 F. Supp. 2d 965 (C.D. Cal. 2007) ................................................................28

*Bateman v. American Multi-Cinema, Inc.,*
   623 F.3d 708 (9th Cir. 2010) ................................................................28

*Bautz v. ARS National Services, Inc.,*
   No. 16-CV-768 (JFB) (SIL), 2016 U.S. Dist. LEXIS 178208, 2016 WL 7422301
   (E.D.N.Y. Dec. 23, 2016) ................................................................14, 16, 21

*Buechler v. Keyco, Inc.,*
   No. WDQ–09–2948, 2010 WL 1664226 (D. Md. April 22, 2010) ................................................................28

*Carter v. Welles-Bowen Realty, Inc.,*
   553 F.3d 979 (6th Cir. 2009) ................................................................21

*City of Boerne v. Flores,*
   521 U.S. 507 (1997) ................................................................23

*Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.,*
   655 F.Supp.2d 1316 (S.D. Fla. 2009) ................................................................12, 13

*Deschaaf v. Am. Valet & Limousine Inc.,*
   No. CV-16-03464-PHX-GMS, 2017 U.S. Dist. LEXIS 21241 (D. Ariz. Feb. 15,
   2017) ................................................................11, 15, 16

*Donoghue v. Bulldog Investors Gen. P'ship,*
   696 F.3d 170 (2d Cir. 2012) ................................................................17, 20

*E.M. v. New York City Dep't of Educ.,*
   758 F.3d 442 (2d Cir. 2014) ................................................................9

*Ehrheart v. Verizon Wireless,*
   609 F.3d 590 (3d Cir. 2010)................................................................28

*Federal Election Comm'n v. Akins,*
   524 U.S. 11 (1998) ...........................................................................19

*Flaum v. Doctors Associates, Inc., d/b/a Subway,*
   204 F. Supp. 3d 1337 (S.D. Fla. 2016) ...............................................14

*Follman v. Hospitality Plus of Carpentersville, Inc.,*
   532 F. Supp. 2d 960 (N.D. Ill. 2007)..................................................28

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,*
   528 U.S. 167 (2000) ...........................................................................9

*Guarisma v. Microsoft Corp.,*
   2016 U.S. Dist. LEXIS 97229 (S.D. Fla. July 26, 2016) .......................9

*Guarisma v. Microsoft, Inc.,*
   209 F. Supp. 3d 1261 (S. D. Fla. 2016) ...............................................14

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982) .......................................................................9, 14

*Horne v. Flores,*
   557 U.S. 433 (2009) ..........................................................................24

*Houston v. Marod Supermarkets, Inc.,*
   733 F.3d 1323 (11th Cir. 2013) .....................................................20, 21

*Kivo v Blumberg Exelsior, Inc.*
   982 F. Supp. 2d 217 (E.D.N.Y. Nov. 16, 2013) ..................................29

*Korman v. Walking Co.,*
   503 F. Supp. 2d 755 (E.D. Pa. 2007) .................................................28

*Kubas v. Standard Packing Corp.,*
   594 F. Supp. 2d 1029 (N.D. Ill. 2009) ...............................................28

*Levine v. World Fin. Network Nat'l Bank,*
   554 F.3d 1314 (11th Cir. 2009) .........................................................27

*Long v. Tommy Hilfiger U.S.A., Inc.,*
   671 F.3d 371 (3d Cir. 2012)..........................................................27, 29

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ........................................................1, 16, 19, 21

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) ................................................................................... 13, 20, 24

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   725 F.3d 65 (2d Cir. 2013) ......................................................................................... 18

*Monsanto Co. v. Geertson Seed Farms,*
   561 U.S. 139 (2010) ................................................................................................... 20

*NDRC, Inc. v. U.S. FDA,*
   710 F.3d 71 (2d Cir. 2013) ......................................................................................... 24

*Noble v. Nevada Checker CAB Corp.,*
   2016 U.S. Dist. LEXIS 110799 (D. Nev. Aug. 19, 2016) .....................................14, 15

*Pappalardo v. Long Is. Rail Rd. Co.,*
   2007 NY Slip Op 618, 36 A.D.3d 878, 829 N.Y.S.2d 173 (App. Div. 2007)..............................

*Parks v. IRS,*
   618 F.2d 677 (10th Cir. 1980) ................................................................................... 12

*Perry v. Cable News Network, Inc.,*
   No. 16-13031-cv, 2017 U.S. App. LEXIS 7416 (11th Cir. Apr. 27, 2017) ............... 11

*Pichler v. UNITE,*
   542 F.3d 380 (3d Cir. 2008).......................................................................................13

*Pollard v. Law Office of Mandy L. Spaulding,*
   766 F.3d 98 (1st Cir. 2014) ........................................................................................ 20

*Public Citizen v. Department of Justice,*
   491 U.S. 440 (1989) ................................................................................................... 19

*Ramirez v. MGM Mirage, Inc.,*
   524 F. Supp. 2d 1226 (D. Nev. 2007) ....................................................................... 28

*Ramirez v. Midwest Airlines, Inc.,*
   537 F. Supp. 2d 1161 (D. Kan. 2008) ....................................................................... 28

*Redman v. Radioshack Corp.,*
   768 F.3d 622 (7th Cir. 2014) ..........................................................................*passim*

*Safeco Ins. Co. of America, v. Burr,*
   551 U.S. 47 (2007) ..........................................................................................*passim*

*Shlahtichman v. 1–800 Contacts, Inc.,*
   615 F.3d 794 (7th Cir. 2010) ................................................................................28, 29

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ...................................................................................... 21

*Simonoff v. Kaplan, Inc.,*
    No. 10 Civ. 2923(LMM), 2010 WL 4823597 (S.D.N.Y. Nov. 29, 2010) ................................... 29

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ............................................................................... *passim*

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ...................................................................................... 21

*Stillmock v. Weis Markets, Inc.,*
    385 Fed.Appx. 267 (4th Cir. 2010) ......................................................................... 28

*Strubel v. Comenity Bank,*
    842 F.3d 181 (2d Cir. 2016) ......................................................................... *passim*

*Sullivan v. Syracuse Housing Authority,*
    962 F.2d 110 (2d Cir. 1992) ............................................................................... 19

*Thompson v. Rally House of Kansas City, Inc.,*
    No. 15-886-CV-W-GAF, Order (W.D. Mo. Oct. 6, 2016) ......................................................... 14

*Tourgeman v. Collins Fin. Servs.,*
    755 F.3d 1109 (9th Cir. 2014) ........................................................................... 20

*Troy v. Home Run Inn, Inc.,*
    No. 07 C 4331, 2008 WL 1766526 (N.D. Ill. Apr. 14, 2008) ...................................................... 28

*Turner Broad. Sys., Inc. v. F.C.C.,*
    512 U.S. 622 (1994) ..................................................................................... 23

*United States v. Students Challenging Reg. Agency Procs.,*
    412 U.S. 669 (1973) ................................................................................... 18, 19

*Van Straaten v. Shell Oil Products Co. LLC,*
    678 F.3d 486(7th Cir. 2012) ........................................................................ 26, 27, 29

*Walters v. Nat'l Ass'n of Radiation Survivors,*
    473 U.S. 305 (1985) ..................................................................................... 23

*Wood v. J Choo USA, Inc.,*
    201 F. Supp. 3d 1332 (S.D. Fla. 2016) ................................................................. 10, 11

*Wood v. J. Choo USA, Inc.,*
    2016 U.S. Dist. LEXIS 106029 (S.D. Fla. Aug. 10, 2016) ........................................................ 14

**Statutes**

15 U.S.C. § 1681c(g) ................................................................................... 11, 15, 28, 29

15 U.S.C. § 1681e(b) .............................................................................................. 8

15 U.S.C. § 1681n ..................................................................................... 17, 25, 27

**Other Authorities**

2004 U.S.C.C.A.N. 1755 (Dec. 4, 2003) (Statement by President George W. Bush) ............. 11, 23

H.R. Rep. No. 108-263 (2003) .................................................................................. 23

Pres. Doc. 1746, 1757 (Dec. 4, 2003) ................................................................... 11, 12

S. Rep. No. 108-166 (2003) ................................................................................... 10

## INTRODUCTION AND SUMMARY

Plaintiff Yaakov Katz submits this memorandum in opposition to the motion to dismiss filed by Defendant Metropolitan Transportation Authority ("MTA").

Congress passed the Fair and Accurate Credit Transactions Act ("FACTA") to protect consumers like plaintiff against *any* increase in risk of credit card fraud or identity theft.  FACTA does so through two simple rules: card-accepting merchants like defendant-appellee must redact from each receipt the card expiration date and, as the MTA did not, all but the last five digits of the card number.  15 U.S.C. § 1681c(g)(1).

Based on significant fact-finding Congress knew that (1) the average consumer tends to automatically throw away card receipts immediately post- purchase, and (2) card numbers are like gold in the hands of fraudsters.   Accordingly, Congress shifted the burden of protecting the very information that thieves are most eager to obtain from consumers to merchants.  Like other consumer protection laws, Congress intended for FACTA to be enforced through private litigation, including class actions, seeking the statutory damages for which "[a]ny person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer."  15 U.S.C. § 1681n(a)(1)(A).

 Congress has twice investigated and determined that redaction of card numbers is necessary to protect consumers against credit card fraud and identity theft.  Nothing in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), permits a court to second-guess Congress's wisdom in enacting FACTA.  To the contrary, *Spokeo* instructs that it is Congress's power, not the Courts', "['] to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" 136 S. Ct. at 1549 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992).   Congress did not act unconstitutionally in vesting Plaintiff with the right to

recover statutory damages despite the absence of other provable harm.  Plaintiff has Article III standing, and this Court should side with the better considered district court decisions to the same effect.

To recover the damages expressly conferred on him in FACTA, Plaintiff must plead and ultimately prove that MTA's violations were "willful." 15 U.S.C. § 1681n(a)(1)(A).  The Supreme Court has made it clear that willfulness in this context does not require "subjective knowledge on the part of the offender."  *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 69 (1997).  Rather, willfulness under FACTA is equivalent to "reckless conduct," which is "objectively assessed," and consists of conduct that is "not only a violation under a reasonable reading of the statute's terms, but . . . that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* Plaintiff's allegations that the MTA programmed hardware and software systems throughout its regional operations to issue point of sale receipts printing "more than the last five digits of the [customer's credit] card number," 15 U.S.C. § 1681c(g)(1), despite years of actual and imputed knowledge of FACTA's simple requirements, including card number truncations, plausibly alleges that the MTA acted "willfully," i.e. "recklessly," in violation of  FACTA and requires that this case go forward and MTA's motion be denied.

## BACKGROUND

*FACTA and the Clarification Act*

Two provisions of the Fair Credit Reporting Act ("FCRA") as amended by FACTA, are pertinent to this motion.  The first, 15 U.S.C. § 1681c(g)(1), provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number . . . upon any receipt provided to the cardholder at the point of

sale or transaction." Plaintiff alleges that MTA violated this provision (the "Card Number Truncation Requirement") when it issued him computer generated point of sale receipts which printed the prohibited first six digits of his credit card number, on two separate occasions, fifteen months apart, at two different bridges operated by the MTA. Plaintiff further plausibly infers, and therefore permissibly alleges, that these were not isolated lapses, but resulted from deliberate programming of computer systems to generate identically violative receipts across its operations at the least during the period between the two Katz receipts. (ECF No. 14, ¶¶ 18-23).

Congress repeatedly declared that its purpose in promulgating the Card Number Truncation Requirement was "to prevent criminals from obtaining easy access to such key information," S. Rep. No. 108-166, at 3 (2003), i.e., "to limit the number of opportunities for identity thieves to 'pick off' key card account information." *Id.* at 13. The Card Number Truncation Requirement is accordingly found under the statutory subtitle "identity theft prevention." *See, e.g.*, FACTA, Pub. L. No. 108-159, Title I, Subtitle A, 117 Stat. 1952). There is no section or provision of FACTA or the Clarification Act denominated "procedures," "procedural requirements," or the like. No provision in FACTA specifies any aspect of the content, size, font size or appearance of credit card receipts, apart from the Card Number Truncation Requirement and its companion prohibition on printing the card expiration date.

Four years after FACTA, Congress took up the subject again in the Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565 ("Clarification Act"). The Clarification Act moderated Congress's prior finding of inherent risk in failing to truncate the expiration date alone, and on that basis granted a retroactive reprieve (long since expired) to prior failures to truncate expiration dates. However, Congress maintained and reinforced its judgment as to the risk inherent in not truncating account numbers, having

3

identified the account number as the "single most crucial piece of information a criminal would need to perpetrate account fraud." Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (Rep. Mahoney)(ECF No. 14, ¶ 39) Accordingly, the text of the Clarification Act includes an express finding that '[e]xperts in the field agree that proper truncation of the card number, by itself as required by the [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub. L. 110-241, § 2(a)(6).   At least one decision denying standing in the case of an expiration date violation has noted this distinction between the two truncation requirements.  *Cruper-Weinmann v. Paris Baguette Am., Inc.*, No. 13 Civ. 7013 (JSR), 2017 U.S. Dist. LEXIS 13660  at *3; 2017 WL 398657 (S.D. N.Y. Jan. 30, 2017).[1]

The second key statutory provision, 15 U.S.C. § 1681n(a)(1)(A), provides that "[a]ny person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer," *inter alia,* for actual damages or "damages of not less than $100 and not more than $1,000" for each violation.  MTA does not appear to dispute that this provision, applied as written, would award Mr. Katz statutory damages in lieu of actual damages for any "willful" failure by MTA to comply with the Card Number Truncation Requirement.

<u>The Amended Complaint</u>

Plaintiff's First Amended Complaint (the "Complaint", ECF No. 14) alleges that the MTA violated FACTA by providing Plaintiff with two credit card receipts, seventeen months apart, at two different bridges operated directly or through one of its affiliated entities that displayed the first six digits of his account number. (*Id.*, ¶¶ 18-19.)  The Complaint further

---

[1] Since our prior report (ECF No. 8), *Cruper-Weinmann* has returned to the Second Circuit, where briefing on the standing issue is now complete, and the case appears to be submitted for decision.

alleges that the receipts provided to Plaintiff were not isolated occurrences, but manifestations of an intentionally implemented, system-wide practice by which the computer which generated the two Katz receipts "was "programmed through hardware and software systems" to print digits which FACTA commands shall not be printed, constantly generating a large volume of uniformly violative receipts. (*Id.*, ¶¶ 20-23)

The Complaint also includes numerous specific allegations of MTA's actual and imputed awareness of FACTA and its Card Number Truncation Requirement, preceded and followed by summary paragraphs tying them to the statutory requirements. We quote these paragraphs in full below. Paragraphs and passages which specifically assert the MTA's actual knowledge of salient facts and legal requirements are set forth with added emphasis:

> 46. Banks and credit card associations (i.e. Visa, MasterCard, American Express, Discover, etc.) have informed entities which accept credit or debit cards, *such as MTA*, for years about FACTA and its Card Number Truncation Requirement.
>
> 47. VISA, MasterCard, the PCI Security Standards Council (a consortium founded by VISA, MasterCard, Discover, American Express), companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed entities which accept credit or debit cards, *such as MTA,* about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers.
>
> 48. *MTA*, by the terms of its contracts with Visa, MasterCard, American Express, and/or Discover, *acknowledged its awareness* of FACTA's Card Number Truncation Requirements and *expressly agreed to be FACTA compliant.*
>
> 49. Visa explicitly instructed entities which accept credit or debit cards, *including MTA,* that a credit or debit card number must be truncated to no more than five digits.
>
> 50. Credit card issuers have given presentations and circulated compliance information and rules to major retailers and associations of such retailers *including, on information and belief, MTA*, to explain how to comply with the Card Number Truncation Requirement.
>
> 51. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all entities which accept credit or debit cards that accept Visa cards, expressly requires that "only the last four digits

5

of an account number should be printed on the customer's copy of the receipt." *MTA, on information and belief, received this and subsequent Rules from Visa.*

52. MasterCard has explicitly instructed entities which accept credit or debit cards, *including MTA,* that all credit or debit card numbers must be truncated on all point of sale receipts as required by FACTA.

53. American Express has explicitly instructed entities which accept credit or debit cards, *including MTA,* that all credit or debit card numbers must be truncated on all point of sale receipts as required by FACTA.

54. Discover has explicitly instructed entities which accept credit or debit cards, *including MTA,* that all credit or debit card numbers must be truncated on all point of sale receipts as required by FACTA.

55. *Not only was MTA informed it could not print more than the last five digits of credit card numbers, it was contractually prohibited from doing so.* Defendant accepts credit cards from all major issuers; these companies set forth requirements that entities which accept credit or debit cards, including Defendant, must follow, including FACTA's Card Number Truncation Requirement.

56. A bulletin dated June 14, 2006 issued by AllianceData, a credit card processor, informed its customers that under FACTA "no person that accepts credit cards or debt cards for the transaction of business shall print more that the last 5 digits of the card number . . . upon any receipt provided to the cardholder at the point of sale transaction." It further stated that Visa required compliance by July 1, 2006 and MasterCard by April 1, 2005.

57. As early as May 2007, the Federal Trade Commission issued a business alert entitled "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," which stated: "According to the federal Fair and Accurate Credit Transactions Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number . . ."

58. *MTA, on information and belief, received and understood such communications.*

59. *By virtue of the matters set forth in paragraphs 46–57, supra, and elsewhere in this Complaint, MTA knew or should have known of its obligations under FACTA for years before the FACTA violations sued for herein.*

60. Nevertheless, *MTA has operated for years, in reckless, i.e. willful, disregard of FACTA's Card Number Truncation Requirement* and, on information and belief (for example the second Katz receipt issued in late January 2017) continued to use point of sale machines or devices that print receipts in violation the Card Number Truncation Requirement at least through January 31, 2017, when this action was filed.

6

61. Each issuance by MTA of a point of sale credit or debit card receipt to Plaintiff and each member of the class defined herein constitutes a separate reckless, i.e. "willful" violation of 15 U.S.C. § 1681c(g).

62. Each such violation subjects the recipient of each receipt to the concrete and particularized harm addressed by Congress in 15 U.S.C. § 1681c(g), namely the increased risk of providing "opportunities for identity thieves to 'pick off' key card account information[.]" S. Rep. No. 108-166, at pp. 3 and 13 (2003)

63. Each violative receipt (such as those provided to Plaintiff Katz) inherently burdens the recipient with whatever additional steps may be needed to ensure the safety of their identity; the receipts may not simply be crumpled and thrown into a nearby trash can, but must be reviewed it to assess what was printed, be retained, and perhaps shredded or cut up later. Such additional inconvenience that consumers must undergo in order to secure their own rights, when Congress, in FACTA, has placed that burden on others, is a concrete injury in fact sufficient to give them standing to seek the statutory damages expressly provided to them in FACTA, apart from and in addition to the standing conferred upon them solely by Defendant's providing them with credit or debit card transaction receipts in violation of the Card Number Truncation Requirement, as set forth in ¶ 26, supra.

64. Plaintiff and the members of the class accordingly have standing to sue for and are entitled to statutory damages of at least $100, as provided by 15 U.S.C. § 1681n(a)(1)(A). (Id., ¶¶ 46-64)(emphasis added)

_Legal Standard_

Even under _Twombly/Iqbal_,[2] courts must continue to "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." _Anderson News, L.L.C. v. Am. Media, Inc._, 680 F.3d 162, 185 (2d Cir. 2012) (citations omitted)  "Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." _Id._, at 184.  In such circumstances, this Court may not choose between two plausible inferences, even if it finds one more plausible.  _Id._ at 185.

---

[2] See, _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544 (2006); _Ascroft v. Iqbal_, 556 U.S. 662 (2009).

## ARGUMENT

I.     **TO ADDRESS AN IDENTIFIED HARM OR RISK OF HARM, CONGRESS CAN CREATE NEW ACTIONABLE PRIVATE RIGHTS THAT HAD NOT PREVIOUSLY EXISTED.**

In *Spokeo,* which MTA's memorandum in support cites perfunctorily but does not seriously analyze, the majority opinion reaffirmed the long-settled tenet that Congress may "'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" 136 S. Ct. at 1549 (quoting *Lujan,* 504 U. S. at 578. All Justices were in complete accord on this point. *Spokeo.*, 136 S.Ct. at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights."); *id.*, 136 S.Ct. at 1554 (Ginsburg, J., dissenting) ("Congress has the authority to confer rights and delineate claims for relief where none existed before.") The Card Number Truncation Requirement at issue in this case perfectly exemplifies the proper exercise of this fundamental legislative power.

*Spokeo* arose under a generalized statutory command to "follow reasonable procedures to assure maximum possible accuracy" of consumer reports. 15 U.S.C. § 1681e(b). Such a provision inherently invites searching judicial interpretation, leading ultimately to an assessment of "reasonable procedures" by the trier of fact. In that distinct statutory context, both the majority and the dissent in *Spokeo* hypothesized that an inaccurate zip code or the failure to correctly notify a consumer of data which was free of inaccuracies could exemplify purely technical violations which would not suffice to confer Article III standing. Cf. *Spokeo*, 136 S.Ct. at 1550 (majority opinion), 1556 (dissent). The only difference among the Justices related to whether or not to remand for certain necessary findings which had not been satisfactorily articulated below.

8

Here, by contrast, the statutory prohibition is defined with absolute precision and rests on legislative findings that the forbidden conduct entails the exact risk of identity theft that the truncation requirement exists to prevent.  Such a "risk of real harm," when so precisely identified and targeted by Congress, "satisf[ies] the requirement of concreteness." *Spokeo,* 136 S. Ct. at 1549.  The prohibited digits on Mr. Katz's receipt exposed him to the exact risk of identity theft that Congress investigated, identified and acted to avoid, and which the Supreme Court has long recognized are appropriately redressed through monetary penalties.  *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185-86 (2000).

*Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373-74 (1982), cited in *Spokeo,* 136 S.Ct at 1553 (Thomas, J., concurring), is instructive.  In *Havens,* a black litigation "tester" – whose only purpose in answering an ad offering apartments for rent was to find evidence of racial discrimination in violation of the Fair Housing Act –"satisfactorily demonstrated injury in fact although the tester had no intent to buy or rent a home." *Strubel v. Comenity Bank,* 842 F.3d 181 (2d Cir. 2016) n. 8 (explaining *Havens*).   *See also Guarisma v. Microsoft Corp.*, 2016 U.S. Dist. LEXIS 97229 at *9 (S.D. Fla. July 26, 2016) ("the Supreme Court recognized where Congress has endowed plaintiffs with a substantive legal right, as opposed to creating a procedural requirement, the plaintiffs may sue to enforce such a right without establishing additional harm."), *citing Spokeo*, 13 S.Ct. at 1549.  Accord, e.g., *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (Article III standing "is determined by 'whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." * * *  "Whether a plaintiff has suffered  an injury in fact" does not "turn . . . on the plaintiff's subjective experience of the harm.")  Like the tester in *Havens*, Katz, as a "cardholder," is the very person for whose protection the relevant

9

substantive statutory provisions were enacted and on whom Congress expressly conferred the substantive right to a properly truncated credit card receipt, enforceable and redressable through his procedural right, and concomitant standing, to recover statutory damages.

Plaintiff suffered a concrete harm once MTA violated FACTA.   As the Second Circuit explained in *Strubel*: "[W]here Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified.'"  842 F.3d at 189 (quoting *Spokeo*, 136 S. Ct. at 1549 (emphasis in original)).

The relevant inquiry is whether the merchant's statutory violation implicates the consumer's "concrete interest in avoiding" a particular form of fraud or financial disadvantage – the "core object" of any carefully crafted consumer protection statute.  *Strubel*, 842 F.3d at 190 (internal brackets, quotation marks and citation omitted).   Where the merchant's violation implicates the consumer's concrete interest in the statute's core object, the violation "by itself" causes injury in fact, as it did here. *Id.* at 190–91 (citing 136 S. Ct. at 1549). Courts have held that FACTA's core object is implicated by the redaction provisions at issue here, finding that "Congress intended to create a substantive legal right through FACTA[,]" in order to help consumers avoid *any* possible exposure to card fraud or identity theft. *Wood v. J Choo USA, Inc.*, 201 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016).   FACTA furthers this core object by "limit[ing] the number of opportunities for [criminals] to 'pick off' key card account information." S. Rep. No. 108-166, at 13 (2003); *accord Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ, 2016 U.S. Dist. LEXIS 92761, at *19 n.9 (N.D. Ga. July 13, 2016).  This ensures that "[s]lips of paper that most people throw away [do] not hold the key to their savings

and financial secrets." Statement by President George W. Bush Upon Signing H.R. 2622, 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

Complying with FACTA's simple requirements is a condition of participation in our nation's card-payment systems. *See* 15 U.S.C. § 1681c(g)(1). A merchant voluntarily assumes the responsibility of safeguarding its customers' private financial data when it accepts their credit cards; those consumers acquire a concrete interest in that merchant's fulfilling its FACTA obligations. *Deschaaf*, 2017 U.S. Dist. LEXIS 21241, at *10. This is because the merchant's manufacture and dissemination of a noncompliant receipt automatically exposes the consumer to an unacceptable increase in risk. *See id.* at *10–11.

Accordingly, "courts have considered a FACTA violation to be concrete *as soon as* a company prints the offending receipt, as opposed to requiring a plaintiff actually suffer identity theft." *Wood*, 201 F. Supp. 3d at 1338 (internal quotation marks and citations omitted) (emphasis added). "The structure and purpose of [FACTA] supports the conclusion that it provides actionable rights" the very moment that the merchant does precisely what Congress commanded it not to do. *Perry v. Cable News Network, Inc.*, No. 16-13031-cv, 2017 U.S. App. LEXIS 7416, at *6 (11th Cir. Apr. 27, 2017); *see Strubel*, 842 F.3d at 190–91.

## II. TO ADDRESS A RISK OF HARM INHERENT IN PROHIBITED CONDUCT, CONGRESS MAY CONFER STANDING ON AN AFFECTED PARTY AND AWARD CONCRETE REDRESS TO A MEMBER OF THE PROTECTED CLASS, WHETHER OR NOT THAT PERSONS SUFFERED HARM HERSELF.

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles . . . it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo,* 136 U.S. at 1549. In cases

11

where additional harm must be alleged, the additional harm can be "intangible." *Spokeo,* 136 S.Ct. at 1549. Indeed, a "risk" of real harm can be sufficient. *Id.* Furthermore, in deciding whether an asserted intangible harm or risk of harm is sufficient, "both history and the judgment of Congress play important roles." *Id.* For example, courts should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*, citing *Vermont Agency of Nat'l Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 775-77 (2000). Thus, if a mere procedural violation is alleged and the circumstances require the plaintiff to allege something more than the violation to assert a concrete injury, an alleged intangible harm or risk of harm that is recognized at common law or identified by Congress is sufficient.

FACTA was created in part "to protect the secrecy, and, thus, the privacy of card holders' complete payment card account numbers and information." *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1333-34 (S.D. Fla. 2009). Indeed, when signing FACTA into law, President Bush expressly noted that the government was "act[ing] to protect individual privacy." *Id.* at 1333, *quoting* 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

MTA's disclosure of Katz's credit card information on its transaction receipt invaded Katz's privacy interests, and this invasion is traditionally regarded as providing an independent ground for a lawsuit. Common-law courts recognized claims for misuse of confidential information even in the absence of further proof of a separate injury because *the invasion of privacy itself* was recognized as a distinct injury. *See Parks v. IRS*, 618 F.2d 677, 683 (10th Cir. 1980) (the "common law tort of invasion of privacy" created a remedy for "personal wrongs which result[ed] in injury to plaintiffs' feelings and [were] actionable even though the plaintiff suffered no pecuniary loss nor physical harm. *It is the invasion of the right that is the essence of the action.*"), citing

12

62 Am. Jur. 2d Privacy §45 (emphasis added); *accord Pichler v. UNITE*, 542 F.3d 380, 398–99 (3d Cir. 2008).   Modern courts are in accord. "Indeed, courts have recognized as a 'species of privacy violation . . . violations of a right to secrecy of personal information . . . .'" *Creative Hospitality Ventures*, 655 F.Supp.2d at 1333-34, quoting *Hooters of Augusta, Inc. v. Am Global Ins. Co.*, 157 Fed. Appx. 201, 208 (11th Cir. 2005) (citing *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 640-41 (4th Cir. 2005); *Am States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, 392 F.3d 939, 942-43 (7th Cir. 2004)).

The judgment of Congress "is also instructive and important." *Id.*  Here, Congress has exercised that judgment twice – first in FACTA and then in the Clarification Act.  In each instance, it specifically found that an improperly truncated account number carries with it an automatic and inherent risk of identity theft and/or credit card fraud, writing that finding into the text of the Clarification Act.   This fully satisfies both prongs of the *Spokeo* inquiry.

In any event, Congress has the power "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law," and beyond that is "well positioned" to do so.  *Spokeo*, 136 S. Ct. at 1549; *see also Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) ("[Congressional] authorization is of critical importance to the standing inquiry: 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'")

## III.   FACTA'S CARD NUMBER TRUNCATION REQUIREMENT, WHETHER SEEN AS "SUBSTANTIVE" OR "PROCEDURAL," IS ACTIONABLE BY THE RECIPIENT OF A VIOLATIVE RECEIPT.

As a general proposition, invasion of a specific, "substantive" statutory interest, e.g. the right to a receipt which complies with the Card Number Truncation Requirement, is approached differently than a merely "procedural" violation. "[A substantive violation], if sufficiently alleged,

13

establishes concrete injury for purposes of Article III, whereas [a procedural violation], under *Spokeo* and *Strubel,* requires a 'real risk of harm' to the underlying right to ensure that the plaintiff does not seek relief for a 'bare procedural violation' that is not constitutionally cognizable. *Bautz v. ARS National Services, Inc.,* No. 16-CV-768 (JFB) (SIL), 2016 U.S. Dist. LEXIS 178208 at * , 2016 WL 7422301 at *8 (E.D.N.Y. Dec. 23, 2016).

The better reasoned decisions have ruled that FACTA truncation rights are substantive and thus actionable without more. *Wood v. J. Choo USA, Inc.,* 2016 U.S. Dist. LEXIS 106029 at *11-*12 (S.D. Fla. Aug. 10, 2016); *Altman v. White House Black Mkt., Inc.,* 2016 U.S. Dist. LEXIS 92761 at *12 (N.D. Ga. July 13, 2016); *Guarisma v. Microsoft, Inc.,* 209 F. Supp. 3d 1261, 1265-66 (S. D. Fla. 2016); *Flaum v. Doctors Associates, Inc., d/b/a Subway,* 204 F. Supp. 3d 1337, 1341-42 (S.D. Fla. 2016); *Amason v. Kangaroo Exp.,* No. 7:09-CV-2117-RDP 2013 U.S. Dist. LEXIS 32981 at * 20-24, 2013 WL 987935 (N.D. Ala., Mar. 11, 2013), and cases cited.  The contrary opinions cited by the MTA in opposition (Mem. At 7) use the term "procedural" less as an analytical tool than as a conclusory epithet. S*ee, e.g., Thompson v. Rally House of Kansas City, Inc.,* No. 15-886-CV-W-GAF, Order (W.D. Mo. Oct. 6, 2016) (dismissing for lack of standing, but failing to discuss *Havens Realty* or analyze whether a violation of substantive rights (standing alone) is a concrete injury, except to note that "there is some appeal in that argument").  Similarly, *Noble v. Nevada Checker CAB Corp.,* 2016 U.S. Dist. LEXIS 110799 (D. Nev. Aug. 19, 2016), conducts almost no Article III analysis. Instead, it focused on the merits question of whether the plaintiff in that case stated a claim. *Noble* at *5-*8. *Noble* only briefly references *Spokeo* (after concluding the plaintiff had failed to state a claim), and it does not cite any FACTA case that discusses *Spokeo* or *Havens Realty*, let alone address or question their reasoning. *Id.* at *9.  *Noble* also addressed unique facts. FACTA prohibits disclosing *more than* the last five digits of a card number on a transaction

receipt. 15 U.S.C. § 1681c(g)(1). But in *Noble*, the defendant disclosed *only five digits* on the receipt (just one digit was outside of the last five), prompting the court to question whether Congress meant FACTA to apply in that case. *Noble*, 2016 U.S. Dist. LEXIS 110799 at *8-*9. No such question is in play here, where MTA unambiguously violated Katz's FACTA rights by disclosing *ten* digits of his credit card number multiple times.  (ECF No. 14, ¶ 20)[3]

A recent decision from the District of Arizona encapsulates what we urge as the correct analysis, noting both the substantive nature of a violation of the Card Number Truncation Requirement and the presence of sufficient concrete and particularized harm beyond the violation itself to satisfy Article III standing requirements, should such additional harm be deemed necessary:

> A person or entity who prints an expiration date [or, as in this case, more than the last five digits of a credit card number] on a receipt . . . does not simply violate a procedural provision of FACTA but creates a real risk of identity theft—the very harm that FACTA was enacted to combat. There is a real risk that the customer's right to the privacy of their credit or debit card information is violated. Nor is this harm made harmless when, as here, the risk fails to materialize because no potential identity thief actually sees the receipt. Even in this situation, the consumer must take additional steps to ensure the safety of her identity; she may not simply crumple the receipt and throw it into a nearby trash can, but must review it to assess what was printed, hold on to it, and perhaps shred it or cut it up later. The inconvenience may be minor; but the additional inconvenience that a consumer must undertake in order to secure their own rights, when a statute places that burden on others, is surely a concrete harm. The injury that [Plaintiff] alleges is therefore a concrete injury in fact. She has standing to bring this action.

*Deschaaf v. Am. Valet & Limousine Inc.*, No. CV-16-03464-PHX-GMS, 2017 U.S. Dist. LEXIS 21241, at *10-11 (D. Ariz. Feb. 15, 2017). This, in substance, and almost verbatim, is paragraph

---

[3] The Katz receipts printed the four last (permitted) digits as well as the first six (prohibited) digits. They are captioned in the name "MTA Bridges and Tunnels."  We do not expect dispute on these points.

63 of the Amended Complaint.  Plaintiff submits that it is the conclusion compelled by a fair and informed consideration of the controlling authorities, including *Spokeo* and *Strubel*.

*Deschaaf* is in harmony with recent decisions such as *Bautz, supra,* in which Judge Bianco's close analysis of *Strubel*, *supra*, led him to hold that "a statutory infraction may result in *de facto* injury-in-fact where historical practice and congressional judgment support finding a substantive right." *Bautz***,** 2016 U.S. Dist. LEXIS 178208, at *28.  Like *Bautz*, the Amended Complaint invokes the Second Circuit's controlling decision in *Strubel* for the key proposition that "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." 842 F.3d at 190, citing *Spokeo,* 136 S.Ct. at 1549. (ECF No. 14, ¶ 26).  See also, cases cited *supra* at 12.

In the final analysis, as *Strubel* and *Bautz* indicate, in cases such as this one, distinctions between "procedural" and "substantive" violations can become moot, as Congress can elevate even the violation of "procedural" rights to a concrete injury to protect against an identified harm, and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo,* 136 S. Ct. at 1549. (emphasis in original)  Thus, a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right. *Lujan*, 504 U.S. at 572 n.7.  Under *Spokeo,* "the risk of real harm" – here the increased risk of identity theft expressly identified by Congress – is more than enough, on its own, to satisfy the concreteness requirement. 136 S. Ct. at 1549.  As the Seventh Circuit has put it, "the less information the receipt contains the less likely is an identity thief who happens to come upon

the receipt to be able to figure out the cardholder's full account information." *Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014).[4]

None of the foregoing has been lost on the Second Circuit, which has recently addressed standing to seek statutory damages under 15 U.S.C. § 1681n in terms which, we submit, are controlling here:

> . . . Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question. See *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (recognizing that injury required by Art. III may be based on "statutes creating legal rights" (internal quotation marks omitted)); accord *Lujan v. Defs. of Wildlife*, 504 U.S. [555,] 578 [(1992)] (recognizing Congress's authority to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law")
>
> *****
>
> . . . [W]here Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified.' *Spokeo,*[]136 S. Ct. at 1549 (emphasis in original).

*Strubel*, 842 F.3d at 188, 189.   Accord, *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 175 (2d Cir. 2012) (same, pre-*Spokeo*).   Katz' situation mirrors that of the plaintiff in *Strubel*, whose standing to recover statutory damages for a failure to disclose how to dispute a credit charge was sustained, despite the fact that she herself had no such disputed charges. "Where an alleged notice violation risks a consumer's ignorance of obligations necessary to his credit rights, . . . we identify *a 'material' degree of risk* sufficient to plead concrete injury." *Strubel*, 842 F.3d at 189-90 n. 9. (emphasis added)

---

[4] Indeed, each additional printed digit beyond the last five permitted by FACTA, regardless of its informational significance in se, exponentially increases a card number's vulnerability to brute force cryptological attack, due to the fact that the permitted digits conclude with a single digit "checksum," see, e.g., http://en.wikipedia.org/wiki/Luhn_algorithm; (visited5/15/2017), which eliminates most of the combinations which must be tried to hit on a working number.

Under these authorities, the additional standing requirement put forward by *Cruper-Weinmann* – that the harm identified by Congress must be present "under the particular circumstances alleged," *Cruper-Weinmann*, 2017 U.S. Dist. LEXIS 13660 at *9,  would appear at the least questionable.  As to the card expiration date,  this analysis can readily be distinguished on the basis of Congress's having withdrawn from its original FACTA finding as to the inherent risks in publishing expiration dates, a fact of which Judge Rakoff took special note.

Whether or not the *Cruper-Weinmann* rationale ultimately stands with respect to its own facts, it would lead to a "Catch-22" result in this case because Mr. Katz safeguarded his own receipts.  Though Mr. Katz would theoretically have standing to sue based on the risk to his own privacy and identity interest, he would lose that right by avoiding harm to himself, in effect forfeiting his right to sue by exercising it.  This cannot be the law.

As is evident from the discussion to this point, "concrete" injury is simply one that is real or *de facto*, *i.e.*, not abstract. *Spokeo*, 136 S.Ct. at 1548. It need not be large, substantial, or even tangible. *Id.*  Indeed, "an identifiable trifle will suffice.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) (citation omitted). As the Supreme Court has explained:

> "Injury in fact" reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation -- even though small -- from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, see *Baker v. Carr*, 369 U.S. 186; a $ 5 fine and costs, see *McGowan v. Maryland*, 366 U.S. 420; and a $ 1.50 poll tax, *Harper v. Virginia Bd. of Elections*, 383 U.S. 663. …. As Professor Davis has put it: "The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."

*United States v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 689, fn.14 (1973)(citations omitted).

In discussing concreteness, *Spokeo* cited *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989). *See* 136 S. Ct. at 1549. In both those cases, the Court held that an individual's inability to obtain information which the statute required to be made public was sufficient to support standing. This case presents an analogous situation, except that instead of depriving the plaintiff of information that Congress required be made public, MTA exposed to potential public view information about Mr. Katz that Congress required be withheld to reduce or avoid an identity theft risk inherent in the prohibited conduct. To establish his standing to obtain the redress for this violation provided by Congress, Mr. Katz "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549.  (emphasis in original.)

Accordingly, "concrete" does not mean economic or monetary. *See, e.g.*, *Sullivan v. Syracuse Housing Authority*, 962 F.2d 110, 1108 (2d Cir. 1992) (plaintiff offended by use of community center by religious group has standing to sue); and *Students Challenging Reg. Agency Procs.*, 412 U.S. at 689, n.14. To the contrary, *Spokeo* reaffirms that a concrete injury can not only be intangible, but the alleged injury can amount to nothing more than a "risk of real harm." *Spokeo*, 136 S.Ct. at 1549.  In fact, *Spokeo* goes even further, recognizing that the alleged violation of a statute, by itself, can supply the requisite injury. *Id.* at 1544.   This is exactly the type of scenario in which Congress "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Lujan,* 504 U.S. at 580, 112 S.Ct. at 2146-47 (Kennedy, J., concurring), citing *Warth v. Seldin,* 422 U.S. at 500, 95 S.Ct. at 2205.

This extends to the power to establish "new rights of action that do not have clear analogs in our common-law tradition." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring).  "In exercising this power, however, Congress must at least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring the suit." *Massachusetts*, 549 U.S. at 516.  Here, Congress has specifically identified the injury to be vindicated (identity theft risk), determined that first eleven digits of credit card numbers should be redacted to alleviate that risk, and extended standing to vindicate that right through statutory damages, applicable to each issuance of a noncompliant receipt.  MTA's direct violation of its truncation obligation to Mr. Katz by definition "entail[s] a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.  Exposure of a consumer to a risk exceeding the risk that Congress deemed acceptable readily satisfies *Spokeo*'s requirement of a concrete injury.

In another significant pre-*Spokeo* decision, the Court found that there was standing to challenge to the denial of a petition for administrative rulemaking where the denial presented a "risk of harm" (climate change) and that there was a "'substantial likelihood that the judicial relief requested" would "prompt EPA to take steps to reduce that risk." *Massachusetts v. EPA*, 549 U.S. 497, 520, 521–26 (2007) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 79 (1978))).  See also *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 146, 156 (2010) (applying *Monsanto* "risk of harm" standing analysis to private parties).  Here, Congress has specifically identified and defined the risk to be avoided.  Individual standing for those subjected to that prohibited risk follows.

The Courts of Appeals, prominent among them the Second Circuit, have long espoused this rule. *See Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 175 (2d Cir. 2012) ("it has long been recognized that a legally protected interest may exist solely by virtue of statutes creating

20

legal rights, the invasion of which creates standing, even though no injury would exist without the statute."); *see also Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 102-103 (1st Cir. 2014); *Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1115-16 (9th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330 (11th Cir. 2013); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009); *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 989 (6th Cir. 2009). A good example is *Marod Supermarkets*, which held that a plaintiff has standing to sue a business for having an architectural barrier that violates his substantive rights under the Americans with Disabilities Act, even if the plaintiff was merely a "tester" who visited the business for the purpose of encountering the barrier so he could sue. *See Marod Supermarkets*, 733 F.3d at 1330. The plaintiff did not identify harm beyond the violation of his substantive rights, yet still met the injury requirement. *See Id.* at 1332.

The final two standing elements, particularity and traceability, require little discussion. Katz meets the particularization element because he alleges two separate occasions on which the MTA printed *his* particular credit card number. Thus, these actions affected him "in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548. This is not a case in which the plaintiff sues to enforce a right to seek a penalty that belonged to the government, not itself. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106  (1998).  As Judge Bianco noted, a plaintiff must "sustain a grievance distinct from the body politic, not a grievance unique from that of any identifiable group of persons." *Bautz*, citing, *Strubel*, 842 F.3d at 191 n.10, and *Sierra Club v. Morton*, 405 U.S. 727, 734-40 (1972)).

Standing also requires that the claimed injury be "fairly traceable to the challenged action of the defendant, and not the result [of] the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136, citing *Simon v. Eastern Ky. Welfare Rights Org.,*

426 U.S. 26, 41-42 (1976).  Such traceability here is almost too obvious to require discussion.
The MTA printed and issued to Mr. Katz the receipts at issue in this case.    Whatever
consequences may flow from these acts are "fairly traceable" to the MTA and the MTA alone.

MTA's argument under this heading, however, has nothing whatever to do with
traceability in the standing context, but instead appears to be a "wrong defendant" claim offered
without tendering a shred of proof as to any facts which might support it in this case.  (MTA
Mem. at 13-14)  In support of this digression, we are treated to a series of cases in which a
notice of claim against one of the MTA's subsidiary or affiliated entities was ruled untimely
against another such entity or the MTA itself.  Even on its own terms, this misplaced argument
is unsupported and premature.

None of these cases fairly address the present suit, initiated against the MTA, defined to
include its constituent entities, nor do they deal with "back office" functions, such as credit card
operations, which are often commonly administered among affiliates. Indeed, in a document
posted on its website, titled "Related Entities," the MTA calls out every entity and facility
pleaded in paragraph 10 of the Complaint and expressly notes both their "business
interrelationship" and their "common governance."   Under the heading "Facilities and
Operations," the MTA describes *MTA Headquarters (including Business Operations center)"* as
including "departments which perform largely all-agency functions, including . . . budget and
financial management, . . .finance, . . legal, planning, procurement, . . . corporate compliance and
ethics."  See,  http://web.mta.info/mta/compliance/pdf/MTA-Creation-Structure.pdf,  last
visited May 15, 2017.[5]  Based on the these public filings and disclosures (ECF No. 14, ¶ 10 n.1),
Plaintiff has sued the entity which issued him the receipts in question and admits doing so on

---

[5]  The web posting includes only pages A-2 and A-3 of what would appear to be a longer and more informative
document.

the face of these documents and publicly claims to provide the agencies within its empire with every category of management service which one would expect to include credit card operations. Whatever may come to light later, that is enough to move this case past the pleading stage.

## IV.   CONGRESS' TWICE REPEATED FINDINGS AS TO THE RISK OF HARM INHERENT IN A VIOLATION OF THE TRUNCATION REQUIREMENT MERIT "MUCH DEFERENCE."

When Congress acts "in the first instance" to "determine whether and what legislation is needed," its "conclusions are entitled to much deference." *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997).   The Supreme Court has laid out the bases for such deference:   "Sound policymaking" – in consumer protection no less than in other areas – "often requires legislators to forecast and address future events based on deductions and inferences for which complete empirical support may be unavailable." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 665–66 (1994).[6]  Second, Congress "is far better equipped than the judiciary to amass and evaluate the vast amount of data bearing upon" legislative questions. *Turner*, 512 U.S. at 665; *see also Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 331 n.12 (1985) ("When Congress makes findings on essentially factual issues . . . those findings are of course entitled to a great deal of deference.")   Congress is far better able to assess the potential identity theft risks posed by dissemination of certain credit card digits than a court in a single case with a single plaintiff.

These considerations apply in full to the present case.   In 2003, Congress passed FACTA, specifically the truncation requirement, to protect consumers from identity theft – a problem it found had "reached almost epidemic proportions in recent years." H.R. Rep. No. 108-263, at 25 (2003).   As the President said in signing the Act, "this law will help prevent identity theft before it occurs, by requiring merchants to delete all but the last five digits of a

---

[6]  The slightly lowered deference applicable in the context of First Amendment Rights, on which the decision in *Turner* hinged, has no application here.

23

credit card number of store receipts." 39 Weekly Comp. Pres. Doc. 1746, 2004 U.S.C.C.A.N. 1755, 1757 (Dec. 4, 2003) (Statement by President George W. Bush). In adhering to this determination in the Clarification Act, Congress stressed the key role of the truncation requirement in the statutory text itself. *Supra* at 1, 13.

Katz's standing is also confirmed under *Spokeo* by the purpose of the standing requirement, which is not an arbitrary limitation, but rather exists to ensure the court's resources are brought to bear on a real controversy asserted by a genuinely interested party with something to gain. *Spokeo*, 136 S.Ct. at 1556 (Ginsberg, J., dissenting), citing *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979); *see also Massachusetts*, 549 U.S. at 517 (""[T]he gist of the question of standing' is whether the petitioners have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'"), quoting, *Baker v. Carr*, 369 U.S. 186, 204 (1962).

Katz's claim squarely meets every test articulated in *Spokeo*, viewed from any available angle. He alleges a real (not hypothetical or abstract) FACTA violation that is particular to him (because it concerns his credit card information) and subjects him to the exact risk of identity theft which Congress determined required legislative redress. Moreover, he alleges the violation is willful which, if proven, entitles him to recover $100 to $1,000 in statutory damages. Plainly, the actual violation of Katz's private rights and resulting ability to recover statutory damages (and impose on MTA an obligation to pay them), presents a real, substantial controversy by a plaintiff with a concrete stake. *See Horne v. Flores*, 557 U.S. 433, 445 (2009) ("Here, as in all standing inquiries, the critical question is whether at least one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court

jurisdiction.'") (citations omitted) Katz also meets the "traceability" and "redressability" elements. The violation of his FACTA rights is fairly traceable to MTA's actions because MTA is the one that printed the receipt publishing Plaintiff's credit card information. *See NDRC, Inc. v. U.S. FDA*, 710 F.3d 71, 84 (2d Cir. 2013) ("causal connection" is sufficient). Likewise, Katz's injury can be redressed by a favorable ruling because Congress expressly gave Plaintiff a right to sue MTA for statutory damages.

### V.   UNDER THE SUPREME COURT'S *SAFECO* TEST, MTA'S CONDUCT, "OBJECTIVELY ASSESSED," "RAN A RISK OF VIOLATING THE LAW SUBSTANTIALLY GREATER THAN THE RISK ASSOCIATED WITH A READING THAT WAS MERELY CARELESS," AND THEREFORE DOES NOT REQUIRE "SUBJECTIVE KNOWLEDGE ON THE PART OF THE OFFENDER."

Whether a defendant may be alleged to have "willfully fail[ed] to comply" with the Card Number Truncation Requirement so as to trigger an award of statutory damages is controlled by *Safeco Ins. Co. of America, v. Burr*, 551 U.S. 47, 68 (2007). Under *Safeco*, a "willful" violation sufficient to support a damage award under 15 U.S.C. § 1681n(a) does not "require[] subjective knowledge on the part of the offender." 551 U.S. at 69 & n.18. Rather, the term "willfully" within the meaning of 15 U.S.C. § 1681n encompasses "reckless" conduct which, "objectively assessed," is "not only a violation under a reasonable reading of the statute's terms, but . . . [conduct that runs] a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

The Court concluded that the defendant in *Safeco* had in fact violated the statute at issue, properly construed. However, the Court found that defendant's conduct reflected a reasonable, albeit erroneous, construction of a "less-than-pellucid" statutory text. On those facts, the Supreme Court held that defendant's conduct could not rise to the level of objectively assessed

recklessness required to satisfy the willfulness requirement of 15 U.S.C. § 1681n.  *Id.* at 69-70. In this connection, MTA's motion papers nowhere assert that its failure to follow the truncation requirement resulted from any misapprehension or confusion as to the meaning of the Card Number Truncation Requirement leading to a "merely careless" reading of the statute.   In arguing that Plaintiff failed to allege facts sufficient to show willfulness, the MTA cites *Safeco* only once – for the proposition that willful violations of FACTA include "not only knowing violations of [the statute] but also reckless ones," (MTA Mem. at 15, citing *Safeco*, 551 U.S. at 57.)  There is no further mention or discussion of *Safeco* or of the Supreme Court's meticulously articulated objective standard for "recklessness."   Instead, the MTA puts forward its own subjective standard for recklessness, by erroneously insisting that it can only be liable for actual knowledge and specific intent to violate the statute.

This entirely subjective standard, substantively identical to that espoused in the now vacated decision in *Cruper-Weinmann v. Paris Baguette Am., Inc.,* runs directly counter to *Safeco.* First, it ignores the Supreme Court's clear admonition that recklessness is "objectively assessed" and does not "require[] subjective knowledge on the part of the offender." 551 U.S. 47 at 69 & n.18.   Second, it bypasses the Supreme Court's specific tests for "recklessness," which the Complaint more than amply meets.

*Redman* v. *RadioShack Corp.,* 768 F.3d 622, 627 (7th Cir. 2014), is the most recent circuit court decision explaining the rationale and effect of the *Safeco* "willfulness/recklessness" standard under FACTA:

> To act "willfully" is, for purposes of civil law, to engage in conduct that creates "an unjustifiably high risk of harm that is either known or so obvious that it should be known," *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) – reckless conduct, in other words, as held in *Safeco Ins. Co. of America v. Burr*, [*supra*], but reckless conduct in the civil sense. . . . "*it is enough that*

26

*the risk, besides being serious and eminently avoidable, is obvious; it need not be known to the defendant.*" (internal citation omitted)(emphasis added)

As circuit decisions uniformly hold, the objective *Safeco* standard does not depend on the defendant's state of mind. E.g., *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 491(7th Cir. 2012) ("the statutory standard concerns objective reasonableness, not anyone's state of mind." *see also id.* at 491 (Cudahy, J., concurring) ("[T]he appropriate and sole measure of recklessness is objective reasonableness."); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012) ("[A]ctual knowledge or intent as to FACTA's requirements is immaterial to the objective reasonableness analysis."); *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009) (To prove a reckless violation, a consumer must establish that the action .... "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." quoting *Safeco*, 551 U.S. at 69).

In short, the MTA's alleged programming of hardware and software systems to issue noncompliant point of sale receipts, despite years of actual knowledge and repeated public and private reminders of the statute's requirements, entailed a 100% "risk" of violation, as the Complaint alleges. (ECF No. 14, ¶ 24)  That risk, tantamount to a guarantee of noncompliance, "besides being serious and eminently avoidable, [was] obvious." *Redman v. RadioShack*, 768 F.3d at 627.  Under *Safeco*, the MTA's conduct in defiance of the statutory command was reckless, rendering it willful within the meaning of 15 U.S.C. § 1681n.

## VI.  FACTA'S CARD NUMBER TRUNCATION REQUIREMENT IS SUSCEPTIBLE OF ONLY ONE CONSTRUCTION, UNDER WHICH DEFENDANT'S SYSTEMATIC VIOLATION OF IT WAS RECKLESS WHEN "OBJECTIVELY ASSESSED" UNDER *SAFECO*.

Unlike the provision at issue in *Safeco*, the FACTA truncation requirement that the MTA violated is clear and unambiguous –

> No person . . . shall print more than the last 5 digits of the card number . . . upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g). Unlike the provision at issue in *Safeco,* this language is nothing if not "pellucid." Cf., 551 U.S. at 69.

As courts have uniformly recognized, there can be no "reasonable reading" of this language that could allow a person to do exactly what the statute prohibits. *See, e.g., Redman v. Radioshack,* 768 F.3d at 629 ("The first part of the statutory provision, dealing with the credit-card number, is explicit . . .") *Shlahtichman v. 1–800 Contacts, Inc.,* 615 F.3d 794, 795-96 (7th Cir. 2010); *Bateman v. American Multi-Cinema, Inc.,* 623 F.3d 708, 711 (9th Cir. 2010); *Stillmock v. Weis Markets, Inc.,* 385 Fed.Appx. 267, 268 (4th Cir. 2010); *Ehrheart v. Verizon Wireless,* 609 F.3d 590, 592 (3d Cir. 2010); *Buechler v. Keyco, Inc.*, No. WDQ–09–2948, 2010 WL 1664226 (D. Md. April 22, 2010) (the truncation requirement "is *unambiguous.*"); *Ramirez v. Midwest Airlines, Inc.,* 537 F. Supp. 2d 1161, 1172 (D. Kan. 2008) ("[The statute] *could not be more clear* in requiring merchants to omit all but the last five digits of a card number as well as the expiration date."); *Arcilla v. Adidas Promotional Retail Operations, Inc.,* 488 F. Supp. 2d 965, 970 (C.D. Cal. 2007) ("[Section] 1681c(g) . . . *[has] only one reasonable meaning* . . . a retailer must print no more than 5 digits of a card number, and also must omit the expiration date—doing either violates the statute."); *Troy v. Home Run Inn, Inc.,* No. 07 C 4331, 2008 WL 1766526, *3 (N.D. Ill. Apr. 14, 2008) ("[U]nlike the statutory provision at issue in *Safeco,* the text of section 1681c(g) is *unambiguous.*"); *Follman v. Hospitality Plus of Carpentersville, Inc.,* 532 F. Supp. 2d 960 (N.D. Ill. 2007) ("The *plain meaning* of the statute is that no merchant may print more than the last five digits of the card number, nor

may they print the expiration date of the card on the receipt."); *Kubas v. Standard Packing Corp.*, 594 F. Supp. 2d 1029, 1032 (N.D. Ill. 2009); *Korman v. Walking Co.*, 503 F. Supp. 2d 755 (E.D. Pa. 2007); *Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226 (D. Nev. 2007). (All emphasis added.) FACTA's explicit prohibition on doing exactly what the MTA forecloses any attempt to shelter behind an "objectively reasonable" alternate interpretation under which the statute would allow what it expressly forbids.

The MTA nowhere claims that its conduct was in accordance with an erroneous but objectively reasonable interpretation of the statute and therefore merely negligent. Indeed, the MTA's memorandum in support concedes by silence, as it must, that printing the exact digits which the statute commands shall not be printed has no defensible basis in the statutory text.[7]

Moreover, the MTA's systematic publication of the first six digits of card numbers increases the possibility of identity theft. See also *Shlahtichman*, 615 F.3d at 802 (stating that a paper receipt "produced at the point of sale . . . may be dropped, mislaid, or discarded by the consumer in any manner of public places where it easily can be retrieved and put to nefarious use"); *Redman* v. *RadioShack Corp.,* 768 F.3d at 626 ("[S]hould the cardholder happen to lose the receipt of a transaction, the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account

---

[7] *Compare e.g. Safeco*, 551 U.S. at 50 (holding Safeco's conduct was in accord with an interpretation that had foundation in the statutory text and thus was not objectively unreasonable); *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486 (7th Cir. 2012) (it was not objectively unreasonable under *Safeco* to print the last four digits of "account number" as distinguished from the prohibited "card number" digits); *see also Shlahtichman*, 615 F.3d at, 803–04(not objectively unreasonable under § 1681c(g) to print expiration date on e-mailed receipt as not issued at "point of sale"); *Simonoff v. Kaplan, Inc.*, No. 10 Civ. 2923(LMM), 2010 WL 4823597, *3 (S.D.N.Y. Nov. 29, 2010) (same); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371 (3d Cir. 2012) (not objectively unreasonable under § 1681c(g) to print receipt showing expiration month of credit card, but not expiration year); *Kivo v Blumberg Exelsior, Inc.* 982 F. Supp. 2d 217, 220 (E.D.N.Y. Nov. 16, 2013), ("This Court need only determine whether the Defendant willfully violated Section 1681c(g) – i.e., whether the Defendant's reading of Section 1681c(g) is objectively reasonable").

information and thus be able to make purchases that the seller will think were made by the legitimate cardholder"). Accordingly, Plaintiff has alleged facts showing not only that the MTA "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless," *Safeco*, 551 U.S. at 69, but also that the MTA thereby increased the risk to Plaintiff and the members of the putative class of identity theft.

## CONCLUSION

Defendant's motion to dismiss the complaint should be denied.

May 15, 2017

Respectfully Submitted,

**HERZFELD & RUBIN, P.C.**

By: _____
Daniel V. Gsovski (dg4413)
A Member of the
Firm
125 Broad
Street
New York, New York 10004-1300
(212) 471-8512
(212) 344-3333 (FAX)
E-mail: dgsovski@herzfeld-rubin.com

**LAW OFFICES OF SHIMSHON WEXLER, P.C.**

By: ____//s:: Shimshon Wexler_____

Shimshon Wexler
216 West 104th St., #129
New York, New York 10025
(212) 760-2400
(917) 512-6132 (FAX)
E-mail: shimshonwexler@yahoo.com
Attorneys for Plaintiff Yaakov Katz

30